UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Dawn M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 2:20cv249 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022 (2D).

2. The claimant has not engaged in substantial gainful activity since March 12, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical spine with radiculopathy; DDD of the lumbar spine; degenerative joint disease (DJD) of the right hip; DJD of the bilateral feet; DJD of the bilateral hands; bilateral hearing loss; migraines; neuropathy; obesity; fibromyalgia; and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1426).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except lift/carry and push/pull 10 pounds occasionally and less than 10 pounds frequently, stand/walk 2 hours in an 8-hour workday, sit 6 hours in an 8-hour workday with normal breaks; no ladders, ropes, or scaffolds, occasional ramps or stairs, occasional balancing, stooping, kneeling, crouching, crawling; no exposure to unprotected heights or moving mechanical parts; frequent handling and fingering with the bilateral upper extremities; moderate noise environment; no work on the telephone; no exposure to extreme cold or extreme heat as part of the job duties; and can carry out simple tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 23, 1974 and was 42 years old, which is defined as a younger individual age 45-49 [sic], on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

3

>
> economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2017, through the date of this decision (20 CFR 404.1520(g)).

(AR. 25-38).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 25, 2021. On April 9, 2021 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on May 5, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162

n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was examined in 2016 for chronic migraines. (AR. 508). The prescribed medication and a series of nerve blocks did not relieve her symptoms. (AR. 515). She was hospitalized from March 23, 2017 through March 25, 2017 at Community Healthcare System reporting headaches, fatigue, and nausea for the last two weeks. (AR. 574). Her diagnoses included chronic migraines. (AR. 508-509). Plaintiff was prescribed additional medications of Savella and Relpax. (AR. 510). In May 2017, she was diagnosed with severe headaches. (AR. 672).

Plaintiff completed a Headache Questionnaire in February 2018 reporting that her migraines were exacerbated by stress, lack of sleep, lights, noise, odors, and occurred 22 times per month and lasted about five to seven hours. (AR. 237). In November 2018, Plaintiff reported headaches approximately 25 days out of the month that lasted about six hours each. (AR. 897). Dr. Kassar administered Botox injections to her head, cervical spine, and upper back. (AR. 897, 908, 935). In 2019, Plaintiff reported headaches were exacerbated by cold weather, movement, and stress. (AR. 852). In April 2019, Plaintiff reported that nerve blocks worsened her migraines. (AR. 49-50).

Plaintiff was diagnosed with cervical and lumbar spine radiculopathy. (AR. 514-515). She reported constant back pain with bilateral arm and leg tingling. (AR. 512, 523-524). Dr. Samer Kassar, her treating neurologist, reported an EMG confirmed cervical spine polyneuropathy. Her treatment for neck and back pain included medication, physical therapy, and steroid injections. (AR. 514, 528, 666). Cervical spine muscle testing revealed decreased strength and range of

5

motion of the left upper extremity. (AR. 530). In March 2017, a cervical spine MRI confirmed spurring, facet arthrosis, narrowing, and thecal sac stenosis at C4-5 and C5-6. (AR. 654-655). In May 2017, Plaintiff reported cervical injections did not work. (AR. 702).

In January 2019, Plaintiff had headaches and radiating bilateral leg pain that was exacerbated by sitting and movement. (AR. 852). She was unable to lift her arms above the shoulders, and she had low back pain with a positive straight leg raise test bilaterally. (AR. 854, 917). She had bilateral lower extremity weakness and no reflexes. (AR. 858). Plaintiff reported she could only "sit for a short amount of time…". (AR. 854). It was noted she was moderately obese with a BMI of 35. (AR. 619, 675). In February 2019 and April 2019, Plaintiff had additional positive straight leg raise tests. (AR. 924-929).

Plaintiff was examined by a rheumatologist at Medical Specialists as early as 2012. An ANA screen showed a high sedimentation rate of 25, and she had 18 positive trigger points. (AR. 325, 331, 339, 343-344, 361). Plaintiff reported joint and muscle pain with chronic back pain and fatigue. (AR. 337, 341, 359, 362, 512-513, 517). She reported imbalance and uncoordinated movements with numbness and tingling in bilateral extremities. (AR. 513, 515, 666). Plaintiff had an antalgic gait. (AR. 514). Medication side effects included lethargy. (AR. 671).

In April 2017, Dr. Kassar noted that Plaintiff's deep tendon reflexes were absent with decreased sensation of bilateral arms and legs. (AR. 693). Plaintiff reported that Fentanyl patches caused her to feel "wired" and caused insomnia. (AR. 743, 746). In February 2018, Dr. Kassar advised Plaintiff to use a cane; she had a "wide based" gait. (AR. 761, 801). Dr. Kassar increased her Gabapentin to 600 mg. (AR. 803). Moreover, she was unable to bend fingers due to increased pain. (AR. 795).

6

In July 2018, Plaintiff was examined by SSA consultative examiner, Dr. Soraj Arora. (AR. 810). The consultative examiner reported Plaintiff had problems reaching above the head and rising from a seated position. (AR. 811). The consultative examiner's report indicates that when Plaintiff was asked about her leg pain and needing to stand up, she whimpered, "I hurt." (AR. 834). Dr. Arora did not provide an opinion, but diagnosed migraines and fibromyalgia. In January 2019, Plaintiff continued to experience pain and weakness in her bilateral lower extremities. (AR. 853).

Plaintiff has difficulty hearing with right-sided deafness and wears a left-sided hearing aid. (AR. 371, 377, 380, 484). A hearing test in September 2018 revealed Plaintiff had profound hearing loss in the right ear and severe loss in the left ear. (AR. 844).

In August 2018, an SSA psychological examiner noted that Plaintiff appeared sad and cried throughout the interview. (AR. 834-835). The consultative examiner noted that she "appeared nervous" while discussing her leg circulation problems. (AR. 834).

Treating neurologist, Dr. Kassar, completed a Fibromyalgia Medical Assessment Form in November 2017. (AR. 684-691). Dr. Kassar opined Plaintiff could rarely lift/carry less than 10 pounds; sit about two hours, 30 minutes continuously; stand/walk for less than two hours, five minutes continuously; and walk less than one block. (AR. 687-689). She would require a sit/stand option every five minutes for five minutes each time and unscheduled breaks every 60 minutes, 10 minutes each. (AR. 688). Dr. Kassar opined Plaintiff would need to lie down throughout the day. (AR. 688). She could rarely bend or climb stairs and never stoop, crouch, crawl, kneel, and climb ladders. (AR. 689). Plaintiff could occasionally look down, turn head left or right, and look up but never hold head in a static position. (AR. 689). She would be limited to reach in front bilaterally

7

50 percent of a workday and reach overhead bilaterally 25 percent of the day. (AR. 689-690). In addition, Plaintiff's mental impairments caused "fuzzy thinking" and interfered with her ability to concentrate 20 percent of the day. (AR. 690). She could not tolerate even low stress work and would be absent more than four days per month. (AR. 687, 690). Supporting evidence included positive trigger points in bilateral shoulders and arms and upper and lower back. (AR. 685). An EMG confirmed polyneuropathy due to cervical radiculopathy, and a cervical spine MRI showed spondylitic changes with thecal sac stenosis. (AR. 687).

In May 2018, Dr. Kassar completed a Physical Residual Functional Capacity Questionnaire. (AR. 791-793). Plaintiff's symptoms included pain, light and sound sensitivity, generalized numbness, and burning in her toes and fingers. Plaintiff's anxiety with panic attacks interfered frequently with maintaining attention and concentration. (AR. 791). Dr. Kassar opined Plaintiff could perform light work with unscheduled breaks every two to three hours, sit/stand option at will, with limited ability to balance, lift above the head, grasp, twist objects. (AR. 791-792-796). She would be absent from work about three days per month. (AR. 793).

In January 2019, Dr. Kassar completed an Attending Physician's Statement. (AR. 846-849). Plaintiff's symptoms were exacerbated by stress and movement. Plaintiff's medication regimen consisted of a Fentanyl patch three times per week, gabapentin, and amitriptyline. Other treatment modalities included massage and Botox injections. Dr. Kassar opined Plaintiff was disabled due to chronic impairments. (AR. 847). Dr. Kassar opined Plaintiff was not able to lift any objects; sit for a total of four hours, one hour continuously; stand for four hours, one hour continuously; and walk for three hours, less than an hour continuously. (AR. 847). She can occasionally drive but never bend at the waist, kneel, crouch, climb, or balance. Plaintiff was

limited in her ability to finger on a keyboard; grip, grasp, and handle objects; and reach in all directions. (AR. 847). In conclusion, Dr. Kassar opined Plaintiff was disabled and unable to work indefinitely. (AR. 849).

Non-examining SSA consultants reviewed the evidence in February 2018 and July 2018. (AR. 83, 95, 107). They found Plaintiff's dysfunction of major joints and spine disorders resulted in a sedentary RFC involving the ability to lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently; sit for about six hours; stand and/or walk for four hours; occasionally climb ramps and stairs, balance, stoop, kneel, and crawl but never climb ladders, ropes, or scaffolds; and frequently handle and finger bilaterally. (AR. 89-90, 102-103, 116-117).

The ALJ found the State agency non-examining psychological consultants' opinions that Plaintiff had no severe mental impairment were generally persuasive. (AR. 34). The ALJ further reported Plaintiff's physical and mental impairments combined caused "moderate limitation in her ability to concentrate, persist, or maintain pace." (AR. 34). State agency medical consultants' opinions were found generally persuasive. (AR. 34). The consultants opined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for about six hours; stand/walk for four hours; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl but never climb ladders, ropes, or scaffolds; frequently finger and handle with bilateral hands; and avoid jobs that required intensive hearing. (AR. 34).

The SSA's psychiatric consultative examiner Jill A. Miller, Psy.D. diagnosed Plaintiff with migraines, hearing loss, and fibromyalgia but not a mental impairment. (AR. 36). The ALJ found her opinion persuasive. The ALJ found that the opinion provided by SSA consultative examination D.O. Soraj Arora was generally persuasive. (AR. 36). Dr. Arora diagnosed fibromyalgia and

9

migraine with multiple tender points bilaterally in the neck, mid-back, low back, bilateral hips, and bilateral knees. (AR. 36). Plaintiff had diminished deep tendon reflexes in all extremities. (AR. 36).

The ALJ found treating neurologist Dr. Kassar's opinions unpersuasive (AR. 34-35). The ALJ indicated Dr. Kassar opined in 2017, 2018, and 2019 that Plaintiff could perform no more than sedentary work, if any at all. (AR. 34-35).The ALJ indicated Dr. Kassar found that Plaintiff's mental status examination was essentially normal. (AR. 34).

In support of remand, Plaintiff argues that the ALJ's RFC assessment is not supported by the evidence. Plaintiff claims that the ALJ rejected all opinion evidence and failed to provide proper explanation on how he assessed the RFC, did not properly assess Plaintiff's migraines, and failed to explain why the need to elevate legs and lie down was not included in the RFC. Plaintiff also argues that the ALJ improperly assessed her subjective allegations.

With respect to the opinion evidence, Plaintiff notes that the opinions in the record included State agency medical consultants who opined Plaintiff could perform sedentary work with postural limitations; State agency psychological consultants who opined Plaintiff was mildly limited in maintaining concentration, persistence, or pace; and her treating neurologist who opined she was not able to work. (AR. 34-36, 83-93, 95-121, 685-691, 791-793, 846-849). The SSA psychological and medical examiners did not provide function- by-function opinions; the psychological consultative examiner diagnosed fibromyalgia, migraines, chronic pain, and hearing loss, and the medical consultative examiner deferred the opinion on functional limitations "to a physician." (AR. 814, 838).

Plaintiff argues that the ALJ's RFC did not include the limitations indicated by State agency consultants or the treating physician. Thus Plaintiff argues that the ALJ rejected all medical

10

opinions and crafted the RFC without a full explanation, thereby creating an evidentiary deficit.

In response, the Commissioner asserts that the ALJ properly resolved conflicts in the opinion evidence and that there was no evidentiary deficit. If an ALJ "identified supporting evidence in the record and built a logical bridge from that evidence to its conclusion," to reach the RFC, a reviewing court should affirm. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)(quotations and citations omitted). The Commissioner argues that the ALJ fulfilled his duty to resolve conflicts in the medical evidence. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). In restricting Plaintiff to a significantly limited range of work, the ALJ found that the opinions of the state agency medical and psychological consultants were "generally persuasive," but not limited enough. (AR. 34). Specifically, the state agency psychological consultants found Plaintiff had no more than mild limitations in mental functioning (AR. 87, 100, 114). The ALJ added a restriction, concluding that Plaintiff had moderate, not mild, limitations in concentration, persistence, or pace. (AR. 27, 34).

The ALJ also reviewed the findings of Samer Kassar, M.D., treating neurologist, and explained why he found it not persuasive. (AR. 35-36). Next, the ALJ reviewed the findings of two consultative examiners, Jill Miller, Psy.D, and Soraj Arora, D.O., and explained why, in contrast, those findings were persuasive. (AR. 36, 810, 832). Thus the Commissioner concludes that given the ALJ's reliance on the consultative examiners and the decision to add restrictions to the state agency consultants, the decision cannot be said to have "an evidentiary deficit."

The Commissioner also notes that the ALJ discussed that the record contradicted Plaintiff's subjective need for greater limitations than found in the RFC. (AR. 29). A claimant's "subjective complaints need not be accepted insofar as they clash with other, objective medical

11

evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

For example, the ALJ reviewed Plaintiff's allegations that she could not carry more than eight to ten pounds and had weak grip strength. (AR. 31). The ALJ explained that the record did not support those allegations, and instead supported a finding that Plaintiff could perform frequent handling, feeling and fingering with her hands. (AR. 28, 31). Specifically, the ALJ noted that Plaintiff had intact or normal grip strength (*see, e.g.* AR. 813, 854). These records, therefore, undermined Plaintiff's alleged hand limitations.

The ALJ also concluded that Plaintiff's poor effort during examinations undermined her physical complaints. (AR. 31). A claimant's failure to cooperate during a medical examination may suffice to undercut her testimony. *Goble v. Astrue*, 385 Fed. App'x 588, 591-92 (7th Cir. 2010). The record supports such a finding here, as it reflects multiple instances of poor effort on Plaintiff's part. (AR. 31, 578, 693, 699, 703, 712, 721, 725, 732, 739, 744, 749, 755, 760, 762, 769, 771, 776, 778, 782, 787, 796, 801, 806, 882, 887). Similarly, despite Plaintiff's complaints of hearing loss and ringing in her ears, her medical records did not show that she had trouble understanding, nor did she exhibit any such difficulty at the hearing. (AR. 33, 826). The ALJ reasonably relied on these records to find Plaintiff's complaints less than fully credible.

Plaintiff argues that the ALJ's decision did not discuss in detail the frequency of Plaintiff's headaches or migraines. The ALJ's decision noted Plaintiff alleged experiencing headaches 22 days out of the month. (AR. 32). The ALJ acknowledged that the medical record shows Plaintiff required extensive treatment involving Botox injections every 12 weeks for migraines. (AR. 33). However, the ALJ did not indicate how many headaches or migraines Plaintiff experienced daily, weekly, or monthly. (AR. 27). The ALJ reported, "Within the record, the claimant is noted to have

frequent migraines;" however, he did not specify as the to number of headaches she experienced. (AR. 32-33).

The ALJ's RFC included simple work with moderate noise, no work on the telephone, and no exposure to temperature extremes as restrictions stemming from Plaintiff's migraines. (AR. 28). The ALJ noted exacerbating factors of headaches included odors, stress, lack of sleep, cold weather, light, and sound. (AR. 29, 32). However, the RFC did not include odors, light, stress level, or lying down in a dark room in the RFC. (AR. 28).

Additionally, the ALJ found that Plaintiff's migraines resulted in moderate limitations in concentration, persistence, or pace. (AR. 34). However, the ALJ did not include any limitations in the RFC that reflected moderate limitations in concentration, persistence, or pace. (AR. 28).

In response, the Commissioner asserts that Plaintiff's migraines were controlled with medications and thus did not warrant greater limitations. "Controllable conditions do not entitle one to benefits or boost one's entitlement by aggravating another medical condition," *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006)(internal quotation and citation omitted). In the present case, Plaintiff reported that Botox and medication alleviated her migraines.( AR. 852). The ALJ reasonably relied on the evidence showing that Botox alleviated Plaintiff's migraines to discount greater limitations. The ALJ acknowledged Plaintiff's claims that she struggled to focus and experienced memory loss, but reasonably concluded that she nonetheless retained adequate mental functioning to perform simple tasks. (AR. 27, 29, 33). The ALJ based that finding on medical records reflecting that Plaintiff regularly demonstrated at least fair concentration and had normal psychiatric examinations. (*See, e.g.*, AR. 27, 836 ("attention and concentration was fair to good"), AR. 319 ("no anxiety and no depression"), AR. 693 ("attention span and concentration

13

are intact"), AR. 760 (same), AR. 769 (same), AR. 771 (same), AR. 776 (same), AR. 778 (same), AR. 782 (same), AR. 787 (same), AR. 796 (same), AR. 801 (same), AR. 806 (same), AR. 841 (normal attention span, concentration, and memory), AR. 882 (attention span and concentration are intact),AR. 887 (same), AR. 892 (normal attention span and concentration), AR. 895 (same), AR. 898 (same), AR. 901 (same), AR. 906 (same), AR. 911 (no memory loss), AR. 912 (normal attention and concentration), AR. 917 (same)).

The ALJ also reasoned that Plaintiff's activities showed she required no more than a restriction to simple tasks. (AR. 27, 29). "[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016). For example, the ALJ noted that Plaintiff managed disability benefits for her husband and child as their payee, she also prepared shopping lists and handled household bills. (AR. 29, 256). Based on Plaintiff's medical records and activities, the ALJ reasonably explained that "there is no compelling evidence of record that would support a finding of more cognitive limitation" than a restriction to simple tasks. (AR. 33).

Plaintiff asserts that the ALJ's decision to restrict Plaintiff to "simple tasks" to accommodate her moderate limitations in concentration, persistence, or pace runs afoul of Seventh Circuit precedent. However, the Seventh Circuit has "not insisted…on a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Rather, it directs courts to focus on the evidence.

Focusing on the evidence in this case, it is clear that substantial evidence supports the

14

ALJ's assessment that Plaintiff could perform simple tasks, despite her "moderate" limitations. In addition to Plaintiff acting as payee for her disabled husband and child and managing bills, she showed adequate cognition for simple tasks in her examination with the consultative examiner. (AR. 27, 33). During that exam, she performed serial sevens and threes, and could perform simple multiplication, division, and calculate change. (AR. 27, 836).

The Commissioner also notes that the agency revised its mental impairment regulations, effective January 2017, to clarify that a "moderate" rating means that a claimant can fairly function in the broad mental area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2). Thus, based on the agency definition of "moderate", no discrepancy exists between the ALJ's moderate finding and the conclusion that Plaintiff was capable of simple tasks. As the Seventh Circuit noted in *Urbanek v. Saul*, 796 Fed. Appx. 910, 914 (7th Cir. 2019), "even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." Here, the record clearly supports the ALJ's finding that Plaintiff retained sufficient functioning to perform simple tasks despite any moderate limitations in concentration, persistence or pace.

Plaintiff suggests that because the state agency consultants found her allegations consistent with the evidence, the ALJ should have as well. However, the consultants found Plaintiff's capable of a greater range of work than the ALJ. (*See, e.g.*, AR. 27-28 (ALJ finding moderate limitations, lift no more than 10 pounds, and stand no more than two hours), AR. 87 (DDS finding no more than mild limitations), AR. 89 (DDS finding can lift up to 20 pounds and stand up to four hours),

15

AR. 114-116 (same)). Thus, any discrepancy between the consultant's findings and the ALJ's were in Plaintiff's favor. As a result, even if there were error Plaintiff cannot show harm.

Plaintiff also faults the ALJ for not discussing each of her allegations on a function-by-function basis, in particular her alleged needs to elevate her legs and to lie down at intervals during the day. However, "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009).

In light of the above, this Court finds that substantial evidence supports the Commissioner's Decision. Accordingly, the Decision must be affirmed.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: May 11, 2021.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court